U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 FEB 23  PM 2: 37

CLERK
BY _C D C_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DANIELLI DE SOUZA RIBEIRO,          )
                                    )
        Petitioner,                 )
                                    )
    v.                              )          Case No. 2:26-cv-15
                                    )
JONATHAN TUREK, in his official     )
capacity as Interim-Superintendent, )
Chittenden Regional Correctional Facility – )
South Burlington; GADYACES          )
SERRALTA, in his official capacity as )
Director of the United States Marshals )
Service; PATRICIA HYDE, in her official )
capacity as Acting Boston Field Office )
Director, Immigration and Customs   )
Enforcement, Enforcement and Removal )
Operations; DAVID W. JOHNSTON, in his )
official capacity as Vermont Sub-Office )
Director of Customs and Immigration )
Enforcement, Enforcement and Removal )
Operations; TODD M. LYONS, in his   )
official capacity as Acting Director, U.S. )
Immigration and Customs Enforcement, )
KRISTI NOEM, in her official capacity as )
Secretary of the United States Department )
of Homeland Security; and PAMELA    )
BONDI, in her official capacity as U.S. )
Attorney General,                   )
                                    )
        Respondents.                )

**OPINION AND ORDER ON AMENDED PETITION FOR HABEAS CORPUS**
**(Doc. 14)**

Petitioner Danielli De Souza Ribeiro brings this Petition for a Writ of Habeas Corpus

under 28 U.S.C. § 2241, seeking her release from immigration detention on Fourth and Fifth

Amendment grounds.  (Doc. 14.)  Respondents ("the Government") are various government

officials whom Ms. De Souza Ribeiro identifies as her legal custodians, including individuals in

the United States Marshals Service ("Marshals Service") and the Department of Homeland Security ("DHS"). Ms. De Souza Ribeiro has been detained since her arrival in the United States on November 7, 2025. (*See* Doc. 14-2; Doc. 14-3.) She has not had a bond hearing before an immigration judge, and it is Defendants' position that she is not entitled to one.

For the following reasons, the court GRANTS IN PART and DENIES IN PART the Amended Petition for a Writ of Habeas Corpus. (Doc. 14.)

### Background

Ms. De Souza Ribeiro is a citizen of Brazil. (Doc. 14-3 at 1; Doc. 14 ¶ 19.) She is 22 years old. (Doc. 14 ¶ 19; Doc. 14-6.) Her petition alleges that, while living in Brazil, Ms. De Souza Ribeiro faced harassment and threats of violence because she is black. (Doc. 14 ¶ 20.) She decided she wanted to leave Brazil and live in North America. (*Id.*) In July 2025, Ms. De Souza Ribeiro applied for a visa to enter the United States, but her visa was denied. (*Id.* ¶ 27.) Then, she found a website for a company that claimed to provide travel to Canada with guaranteed housing, employment, and a work permit. (*Id.* ¶ 28.) Believing she had found a lawful path to entering Canada, she submitted a payment and traveled, as directed, to Montreal. (*Id.* ¶¶ 28–29.)

When she arrived at the Montreal airport on November 6, Ms. De Souza Ribeiro told a customs agent that she was seeking asylum, once again following the instructions the "company" had given her. (*Id.* ¶¶ 30–31.) She also showed the customs agent information she had saved from the company's website. (*Id.* ¶ 31.) At that point, the customs agent informed Ms. De Souza Ribeiro that the website was not legitimate, seized her passport, and released her into the country to pursue asylum. (*Id.*) Ms. De Souza Ribeiro checked into the hostel that the scammers had instructed her to go to, not knowing where else to go. (*Id.* ¶ 32.) Soon, a man approached

her, started speaking to her in Portuguese, and told her he could arrange for her to go to the U.S. (*Id.*) She agreed, and late that night a man drove her and another woman to the woods, where they connected with a masked man. (*Id.* ¶ 33.) With this man, the two women began a lengthy hike through the woods. (*Id.* ¶ 34.) After hours of hiking, the group encountered U.S. Border Patrol officers, who detained Ms. De Souza Ribeiro and the other woman; the smuggler escaped on foot. (*Id.*)

The Border Patrol officers took Ms. De Souza Ribeiro to the Chittenden Regional Correctional Facility ("CRCF") in Vermont, where she remains. (*Id.* ¶ 35; Doc. 14-2.) On November 10, 2025, she was charged in the U.S. District Court for the District of Vermont with criminal illegal entry, and the Marshals Service took custody of Ms. De Souza Ribeiro. (Doc. 14 ¶ 35.) On January 21, 2026, after sharing the details of her smuggling with the U.S. Attorney's Office, her charges were dismissed. (*Id.* ¶¶ 36–37; Doc. 14-1.) She remained detained and in the custody of the Marshals Service between January 21 and January 23, when DHS resumed custody of her. (Doc. 14 ¶ 38.)

Ms. De Souza Ribeiro is now seeking three forms of humanitarian relief from removal. First, she has filed an application for T nonimmigrant status ("T visa"), which is available to victims of "a severe form of trafficking in persons." 8 U.S.C. § 1101(a)(15)(T). Ms. De Souza Ribeiro is also in the process of applying for U nonimmigrant status ("U visa"), which is available to noncitizens who have been victims of certain crimes while residing in the U.S. and who have been helpful to law enforcement in investigating that crime.[1] *Id.* § 1101(a)(15)(U).

---

[1] Ms. De Souza Ribeiro reports that she was sexually harassed and assaulted by a fellow detainee at CRCF. (Doc. 14 ¶ 39.)

Finally, Ms. De Souza Ribeiro has expressed a fear of returning to Brazil and is pursuing a claim for asylum. (Doc. 14 ¶ 41.)

**Statutory and Regulatory Framework**

The Immigration and Nationality Act ("INA") provides for the detention of certain noncitizens during the pendency of their immigration proceedings. For noncitizens who do not have an order of removal, detention is governed by 8 U.S.C. § 1225(b), § 1226(a), or § 1226(c). Section 1225(b) applies to "arriving" noncitizens or "applicants for admission" who are "seeking admission." *See* 8 U.S.C. § 1225(b)(1)(A)(i), (b)(2)(A). Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) governs the detention of any other noncitizen apprehended by immigration enforcement and is generally understood to apply to noncitizens "already present in the United States," i.e., no longer at the border. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) creates a statutory right to a bond hearing before an Immigration Judge, but § 1225(b) and § 1226(c) call for mandatory detention. *Id.* at 302, 305–06. The INA's implementing regulations provide that a T visa applicant who "requests bond or a bond redetermination will be governed by the provisions of part 236 of this chapter," i.e., the regulations implementing 8 U.S.C. § 1226. 8 C.F.R. § 1214.2(a). Thus, the detention authority for noncitizens who have applied for T visas can be found at § 1226(a) or § 1226(c), depending on whether the applicant has committed a crime that would subject her to § 1226(c).

I.    **Analysis**

Ms. De Souza Ribeiro's petition alleges constitutional violations arising from (1) her detention by the Marshals Service from January 21 to January 23; and (2) her continued detention by DHS without an opportunity to seek bond. The Government responds that the

4

Immigration and Nationality Act ("INA") strips the court of jurisdiction to hear these claims and that, notwithstanding the jurisdictional issue, the claims fail on the merits. The court begins by considering the jurisdictional issue.

### A.    Jurisdiction

The Government argues that, "[t]o the extent that the Petition raises any . . . issue relating to [Ms. De Souza Ribeiro's] expedited removal, this Court lacks jurisdiction to consider it" due to the jurisdiction-stripping provisions at 8 U.S.C. § 1252(a)(2)(A). That statute provides as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—
>
> (i)    except as provided in subsection (e), any individual determination or . . . any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
>
> (ii)    except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,
>
> (iii)    the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or
>
> (iv)    except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).

The Government does not specify which provision of § 1252(a)(2)(A) strips this court of jurisdiction to hear Ms. De Souza Ribeiro's claims, instead arguing that, more broadly, § 1252(a)(2)(A) "squarely removes from federal courts any jurisdiction to review issues 'relating to section 1252(b)(1),' except as 'provided in subsection (e).'" (Doc. 15 at 8 (quoting *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020)).) The Government does specify which

5

aspects of Ms. De Souza Ribeiro's claims lie beyond judicial review. Nevertheless, the court will consider the potential applicability of each of § 1252(a)(2)(A)'s provisions. In undertaking this analysis, the court is mindful that "[r]epeatedly, including in the INA context, the Supreme Court has declared that we should 'take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement.'" *Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (alterations in original; quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010)).

First, § 1252(a)(2)(A)(i) does not bar jurisdiction in this case. That provision strips federal courts of jurisdiction to review issues "relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). Ms. De Souza Ribeiro does not challenge her order of removal or its implementation. Instead, she challenges her detention and the Government's determination that she is not entitled to a bond hearing. Her challenge to her mandatory detention is not, therefore, a collateral attack on the expedited removal order; any decision regarding her detention would have no impact on the validity of that order. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (holding that jurisdiction-stripping provisions in § 1252(a) bar review of indirect challenges to orders of removal but that jurisdiction "turn[s] on the substance of the relief that a plaintiff is seeking"); *see also Mahdawi v. Trump*, 781 F. Supp. 3d 214, 227 (D. Vt. 2025) (court had jurisdiction to review habeas petition that challenged only his detention, not his placement in removal proceedings or the underlying basis for those proceedings). Similarly, § 1252(a)(2)(A)(ii) and (iii) do not strip the court of jurisdiction because Ms. De Souza Ribeiro does not challenge DHS's decision to "invoke the provisions of" § 1225(b)(1) or the fact that § 1225(b)(1) applies in her case. She accepts that she is subject to expedited removal proceedings.

Finally, Ms. De Souza Ribeiro does not challenge any "policies or procedures" adopted by DHS to implement § 1225(b)(1)'s provisions.  To the extent that her arguments concern DHS regulations, she *invokes* those regulations rather than challenging them.  Moreover, the regulation at issue in this case, 8 C.F.R. § 1214.2, is not a procedure or policy "adopted by the Attorney General to implement the provisions of section 1225(b)(1)."  8 U.S.C. § 1252(a)(2)(A)(iv).  Rather, as discussed in detail below, it concerns the general treatment of T visa applicants who are in removal proceedings, whether expedited or not.  None of § 1252(a)(2)(A)'s provisions strip this court of jurisdiction to hear Ms. De Souza Ribeiro's claims.

### B.  Detention by the Marshals Service

During the pendency of Ms. De Souza Ribeiro's criminal proceedings, she was incarcerated at CRCF under the custody of the Marshals Service.  She remained detained under their custody for two days after the charges against her were dismissed, until DHS took custody of her.  Before her charges were dismissed, Immigration and Customs Enforcement ("ICE") sent a detainer request to the Marshals Service, indicating that it would seek Ms. De Souza Ribeiro's detention upon her release from the Marshals Service's custody.  Ms. De Souza Ribeiro argues that her continued detention constituted a new arrest and that the arrest was without probable cause in violation of the Fourth Amendment.

The court cannot address the merits of this question because the claim is moot.  The Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  "That limitation requires 'an actual controversy' be extant at all stages of a judicial proceeding, 'not merely at the time the complaint is filed.'"  *United States v. Ross*, 161 F.4th 100, 112 (2d Cir. 2025) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016)).

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 179 (2d Cir. 2025) (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)). Because this case is a habeas action seeking Ms. De Souza Ribeiro's release, not a claim for monetary damages, Ms. De Souza Ribeiro's claim against the Marshals Service is moot; she is no longer in their custody, so the court cannot grant relief in the form of release. The court therefore turns to Ms. De Souza Ribeiro's claim against DHS.

### C.    Continued Detention by DHS without Opportunity for Bond

The parties dispute the statutory basis for Ms. De Souza Ribeiro's detention and, therefore, whether the failure to provide her with a bond hearing constitutes a violation of her due process rights under the Fifth Amendment. The parties agree that, when DHS's detention authority arises from § 1226(a), a noncitizen has a statutory right to a bond redetermination hearing before an immigration judge.

### 1.    Statutory and Regulatory Basis for Ms. De Souza Ribeiro's Detention

As discussed above, "arriving" noncitizens or "applicants for admission" who are "seeking admission" are generally subject to mandatory detention with no statutory right to a bond hearing. *See* 8 U.S.C. § 1225(b)(1)(A)(i), (b)(2)(A). Ms. De Souza Ribeiro does not dispute that she is an "arriving" noncitizen who is "seeking admission." Instead, she points to 8 C.F.R. § 1214.2(a), which lays out procedures related to T visa applicants who are in immigration proceedings. The regulation provides that, "[i]f the [noncitizen] is in DHS custody pending the completion of immigration proceedings, DHS may continue to detain the [noncitizen] until a decision has been rendered on the application." 8 C.F.R. § 1214.2. It further

8

provides, however, that a T visa applicant "who is in custody and requests bond or a bond redetermination will be governed by the provisions of part 236 of this chapter." *Id.*

Part 236 implements 8 U.S.C. § 1226, the section of the INA that provides for non-mandatory detention. The regulation provides, in relevant part, as follows:

> [T]he respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .

8 C.F.R. § 236.1(d)(1). The Government does not argue that Ms. De Souza Ribeiro is mandatorily detained 8 U.S.C. § 1226(c) as a criminal noncitizen, a statute also implemented by § 236. Thus, to the extent that Ms. De Souza Ribeiro's detention is governed by § 1226, it is under the discretionary detention provision located at § 1226(a).

The Government challenges Ms. De Souza Ribeiro's right to a bond hearing under 8 C.F.R. § 1214.2 on two grounds: (1) she is not "in immigration proceedings," as required for her to benefit from 8 C.F.R. § 1214.2; and (2) even if Ms. De Souza Ribeiro passes her credible fear interview and her immigration proceedings continue, 8 U.S.C. § 1225(b)(1)(B) requires her continued detention.

### a.    Whether Ms. De Souza Is "In Immigration Proceedings" as Contemplated by 8 C.F.R. § 1214.2

Section 1214.2(a) of Title 8 of the Code of Federal Regulations is titled "Applications for T visas while in proceedings." It refers several times to T visa applicants who are in "immigration proceedings." Section 1214.2(b) is titled "Stay of final order of exclusion, deportation, or removal." The Government therefore contends that § 1214.2(a) applies only to noncitizens who are still in active immigration proceedings and that Ms. De Souza Ribeiro is *not* in proceedings because "she has a final order of expedited removal." (Doc. 15 at 10.) The INA

does not define "final order of removal" but provides that an order of *deportation* is "final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

Two Supreme Court cases provide helpful guidance. First, in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), the Court considered whether the respondents had "administratively final" orders of removal where (1) the respondents had reentered the U.S. after a prior order of removal; (2) those orders of removal were reinstated; and (3) the respondents sought withholding of removal under the Convention Against Torture ("CAT"). The Court concluded that, even though the respondents could still receive withholding of removal, their removal orders were administratively final because there was "nothing left for the BIA [Board of Immigration Appeals] to do with respect to the removal order other than to execute it." *Id.* at 535.

The Court's holding turned on two interrelated facts. First, the orders of removal were *reinstated* orders that respondents had had the opportunity to contest when they were first issued—and the INA provided for no administrative review of a reinstated order. Second, because of the nature of withholding of removal, a grant of that relief would not affect the validity of the removal orders. As the Court explained:

> If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by statute.

*Id.* at 536.

In *Riley v. Bondi*, 606 U.S. 259 (2025), the Supreme Court similarly emphasized that finality is "tie[d] . . . to agency review" and is the "Executive's *final* determination on the question of removal." *Id.* at 267. And, as in *Johnson*, the Court distinguished between DHS's final conclusion on *removability* and any final conclusions on relief, such as withholding of removal.

Based on those principles, Ms. De Souza Ribeiro's order of removal is not final. The procedures laid out in 8 U.S.C. § 1225(b) provide noncitizens like Ms. De Souza Ribeiro with an opportunity to have a credible fear interview after the initial determination of removability. 8 U.S.C. § 1225(b)(1)(A)(ii). The credible fear determination is subject to review by an immigration judge. *Id.* § 1225(b)(1)(B)(iii)(III). If an immigration judge determines that the noncitizen has a credible fear of persecution or torture, the judge will "vacate the Notice and Order of Expedited Removal and refer the case back to DHS for further proceedings" by the United States Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 1208.30(g)(2)(iv)(B). Alternatively, "DHS may commence removal proceedings under section 240 of the [INA]." *Id.* In other words, DHS has not finally concluded that Ms. De Souza Ribeiro can be removed from the United States because the removal order may yet be vacated. That fact distinguishes Ms. De Souza Ribeiro's case from both *Johnson* and *Riley*, where the orders of removal would remain in place despite a grant of relief.[2]

---

[2] Even if Ms. De Souza Ribeiro's order of removal were final, a serious question would remain regarding whether she was in "immigration proceedings." As other courts have explained, the term "immigration proceedings" is broader than "removal proceedings" and encompasses credible fear interviews. *Las Ams. Immigrant Advoc. Ctr.*, 507 F. Supp. 3d 1, 29 (D.D.C. 2020); *see also Alhariri v. Blinken*, No. 22-CV-1036, 2025 WL 1434317, at *11 (E.D.N.Y. May 19, 2025). Ms. De Souza Ribeiro has yet to have her credible fear interview and could appeal a negative determination to an immigration judge.

The Government's reference to 8 U.S.C. § 1225(b)(1)(A)(i) does not alter the court's conclusion. The Government quotes that section as stating that, for arriving noncitizens like Ms. De Souza Ribeiro, the immigration officer "shall order the [noncitizen] removed from the United States without further hearing or review." (Doc. 15 at 11 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).) But the text continues: an immigration officer "shall order the [noncitizen] removed from the United States without further hearing or review *unless* the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). Furthermore, § 1225(b)(2)(C), entitled "Limitation on administrative review" states that an order of expedited removal is not subject to administrative appeal "[e]xcept as provided in subparagraph (B)(iii)(III),"[3] which concerns review of credible fear interviews.

This conclusion is consistent with DHS's own assessment of the state of Ms. De Souza Ribeiro's immigration proceedings. The detainer that ICE issued on November 10—three days after the removal order—states that probable cause of removability was based in part on "[t]he pendency of ongoing removal proceedings against [Ms. De Souza Ribeiro]." (Doc. 15-2 at 1.) The box for "[a] final order of removal against the [noncitizen]" is unchecked. (*Id.*)

### b.    Scope of 8 C.F.R. § 1214.2(a)

The parties have not cited, and the court has not found, any court or BIA decisions interpreting the part of 8 C.F.R. § 1214.2 that concerns bond for T visa applicants. The Government instead attempts to read 8 C.F.R. § 1214.2 as narrowly as possible. Additionally, the Government argues that "[i]t would turn Congress's system on its head if a person could evade the expedited removal process or mandatory detention to which they would otherwise be subject merely by filing a T-visa application." (Doc. 15 at 11.) And it maintains that, even if

---

[3] The statute lists certain other exceptions that are not relevant here.

Ms. De Souza Ribeiro passes her credible fear interview, she remains subject to mandatory

detention under 8 U.S.C. § 1225(b)(1)(B).  (*Id.* at 12.)

As a preliminary matter, the court notes that Ms. De Souza Ribeiro does not challenge

her placement in expedited removal proceedings or suggest that filing a T visa application allows

a noncitizen to "evade the expedited removal process."  The issue here concerns detention, not

DHS's authority to remove Ms. De Souza Ribeiro from the United States.

The court next considers the narrow reading of § 1214.2(a) that the Government would

have the court adopt.  To understand why the Government's argument fails, it is helpful to begin

with the regulation itself, which reads:

> Individuals who believe they are victims of severe forms of trafficking in persons
> and who are in pending immigration proceedings must inform DHS if they intend
> to apply for T nonimmigrant status under this section.  With the concurrence of
> DHS counsel, a victim of a severe form of trafficking in persons in proceedings
> before an immigration judge or the Board of Immigration Appeals may request that
> the proceedings be administratively closed . . . in order to allow the [noncitizen] to
> pursue an application for T nonimmigrant status with DHS.  If the [noncitizen]
> appears eligible for T nonimmigrant status, the immigration judge or the Board,
> whichever has jurisdiction, may grant such a request to administratively close the
> proceeding . . . .  In the event that DHS finds a[] [noncitizen] ineligible for T-1
> nonimmigrant status, DHS may recommence proceedings that have been
> administratively closed by filing a motion to re-calendar with the immigration court
> or a motion to reinstate with the Board.  If the [noncitizen] is in DHS custody
> pending the completion of immigration proceedings, DHS may continue to detain
> the [noncitizen] until a decision has been rendered on the application.  A[]
> [noncitizen] who is in custody and requests bond or a bond redetermination will be
> governed by the provisions of part 236 of this chapter.

8 C.F.R. § 1214.2(a).

By selectively quoting this regulation, the Government suggests that the detention of a

T visa applicant is governed by part 236 only "[u]nder th[e] particular circumstances" where

(1) the noncitizen has requested and been granted administrative closure; (2) DHS has filed a

motion to recommence proceedings; and (3) DHS has chosen to detain the noncitizen until a

decision has been rendered "on [that] application." (Doc. 15 at 10 (alteration in original; quoting 8 C.F.R. § 1214.2(a)).) Though the Government does not fully explain its position, the structure of its argument suggests that it views "the application" referenced in § 1214.12(a) to be DHS's motion to recommence proceedings.

Courts give considerable deference to agencies in interpreting their own regulations, and the agency's interpretation will "control[] unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted). Here, the Government's reading of the regulation makes little sense. In the scenario the Government describes, USCIS has already denied the noncitizen's T visa application, so there is no basis for treating the noncitizen's detention differently than the detention of other noncitizens. Furthermore, the "application" referenced in the regulation is most naturally read as the T visa application, not as a motion by DHS, which is not an "application" in the traditional sense. And, if the application is the T visa application, it hardly follows to say that the detention provision applies only after USCIS has denied that application and DHS has sought to recommence proceedings; the regulation specifically references DHS's power to detain *while the application is still pending*.

Read as a whole, the plain meaning of the regulation is clear: Part 236, and therefore 8 U.S.C. § 1226, governs the detention of T visa applicants in immigration proceedings, full stop. The regulatory text does not mention any exclusion for applicants who, like Ms. De Souza Ribeiro, would otherwise fall under the mandatory detention scheme outlined in § 1225(b). If it did *not* apply to applicants like Ms. De Souza Ribeiro, it would be entirely superfluous; the detention of noncitizens who have entered the country and are no longer seeking admission is already governed by § 1226, and no regulation would need to specifically call out T visa

applicants in that position for treatment under § 1226.[4]  *See Loughrin v. United States*, 573 U.S.

351, 358 (2014) (holding that reading statute at issue such that its second clause was superfluous

would "run[] afoul of the cardinal principle of interpretation the courts must give effect, if

possible, to every clause and word of a statute") (internal quotation marks and citation omitted).

Faced with the plain meaning of the statute, the Government raises one other argument:

the regulation cannot possibly mean what it says.  The Government quotes the mandatory

detention statute at 8 U.S.C. § 1225(b) and its associated regulations and concludes that, in light

of those statutes, Ms. De Souza Ribeiro is "not entitled to a bond hearing, release, or any other

relief by virtue of having filed a T-visa application."  (Doc. 15 at 11.)  The Government similarly

notes that the INA generally calls for the mandatory detention of arriving noncitizens even after

---

[4] In 2025, the BIA—and DHS more broadly—took the position for the first time that,
under 8 U.S.C. § 1225(b), any noncitizen who enters the country without inspection or admission
is perpetually "seeking admission" and is, therefore, subject to mandatory detention.  *See Matter
of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  Even if one accepts that interpretation of
§ 1225(b), a narrow interpretation of 8 C.F.R. § 1214.2 would render it superfluous.  The
regulation *must* reach T visa applicants who would otherwise be subject to mandatory detention.
If all noncitizens who have entered without inspection are subject to mandatory detention, there
is no basis for distinguishing between those who just crossed the border and those who have
resided in the U.S. for years when interpreting § 1214.2(a), as they would all theoretically fall
into the same "bucket" of noncitizens who are both "arriving" noncitizens and "seeking
admission."  The interpretation of § 1225(b) being litigated around the country therefore has no
bearing on the court's conclusions in this case.

The court also notes that the vast majority of courts that have considered DHS's new
interpretation of § 1225(b) have rejected it, holding that noncitizens who have effected an entry
and taken up residence in the United States are no longer "seeking admission." *See, e.g., Lopez
Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025
WL 2398831 (S.D.N.Y. Aug. 19, 2025) (slip opinion); *Leal-Hernandez v. Noem*, No. 25-cv-
02428, 2025 WL 2430025 (D. MD. Aug. 24, 2025); *Kostak v. Trump*, Civil Action No. 25-1093,
2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297
(W.D. Wash. 2025); *J.U. v. Maldonado*, --- F. Supp. 3d ----, 2025 WL 2772765 (E.D.N.Y.
2025); *Goorakani v. Lyons*, --- F. Supp. 3d ----, 2025 WL 3632896 (S.D.N.Y. 2025); *Lepe v.
Andrews*, No. 25-cv-1163, 2025 WL 2716910 (E.D. Cal. Sep. 23, 2025); *Rodriguez-Acurio v.
Almodovar*, --- F. Supp. 3d ----, 2025 WL 3314420 (E.D.N.Y. 2025); *Lopez v. Trump*, --- F.
Supp. 3d ----, 2026 WL 114708 (D. Vt. 2026).

they have demonstrated a credible fear of persecution. (*Id.* at 12–13.) Those arguments do not engage with or account for the regulatory text at 8 C.F.R. § 1214.2(a). They simply ignore its existence. But the regulation *does* exist. And, as already discussed, the only reading of § 1214.2(a) that the Government offers is not plausible. The Government's argument therefore appears to boil down to the contention—albeit not explicit—that DHS exceeded its authority in promulgating § 1214.2(a) and that the court should therefore ignore the regulation entirely.

That argument cannot succeed. "[I]t is axiomatic that 'an administrative agency must adhere to its own regulations.'" *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 437 (E.D.N.Y. 2011) (quoting *Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 296 (2d Cir. 2006)). "Fidelity to regulations is required 'even if [they] were not statutorily or constitutionally mandated . . . .'" *Id.* (quoting *Bergamo v. Commodity Futures Trading Comm'n*, 192 F.3d 78, 79–80 (2d Cir. 1999)). Further, "[a]lthough it is within the power of [an] agency to amend or repeal its own regulations, [an] agency is not free to ignore or violate its regulations while they remain in effect." *Elevance Health, Inc. v. Becerra*, 761 F. Supp. 3d 1, 13 (D.D.C. 2024) (alterations in original; quoting *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519, 526 n.20 (D.C. Cir. 1978)). Quite simply, when a plaintiff or petitioner seeks to invoke a regulation, an agency "cannot disclaim the validity of its own regulation." *Texas v. E.P.A.*, 726 F.3d 180, 204 (D.C. Cir. 2013) (Kavanaugh, J., dissenting).

In light of § 1214.2(a)'s plain meaning, the court concludes that Ms. De Souza Ribeiro is detained under 8 U.S.C. § 1226(a) and that the law entitles her to a bond hearing before an immigration judge that focuses on flight risk and potential danger to the community. That is enough to determine that the Government must provide her with a bond hearing. Still, the court

must consider Ms. De Souza Ribeiro's contention that the denial of a bond hearing also violates

her Fifth Amendment due process rights.

### 2. Due Process

"In the Second Circuit, the '*Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test

applies when determining the adequacy of process in the context of civil immigration

confinement." *Lopez Benitez*, 795 F. Supp. 3d at 492 (alteration omitted; quoting *Chipantiza-*

*Sisalema*, No. 25 Civ. 5528, 2025 WL 1927931, at *2 (S.D.N.Y. July 13, 2025)); *see also Black*

*v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024) (holding that courts should assess due process

challenges to prolonged detention under 8 U.S.C. § 1226(c) under *Mathews v. Eldridge*).  In

*Mathews*, the Supreme Court identified three factors that bear on the constitutional need for

procedural protections: (1) "the private interest that will be affected by the official action";

(2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S.

at 335.

Many courts in this circuit have considered whether it violates due process for the

government to deny bond hearings to noncitizens detained under § 1226(a).  The answer is a

resounding "yes."  *See, e.g., Lopez Benitez*, 795 F. Supp. 3d at 491–96; *Chipantiza-Sisalema*,

2025 WL 1927931, at *2–*4; *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217–19 (S.D.N.Y. 2025);

*J.U. v. Maldonado*, --- F. Supp. 3d ----, 2025 WL 2772765, at *9–*10; *Goorakani*, --- F. Supp.

3d ----, 2025 WL 3632896, at *6, *8; *Rodriguez-Acurio*, --- F. Supp. 3d ----, 2025 WL 3314420,

at *28–*30; *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *8–*9 (E.D.N.Y. Oct. 5,

2025); *Minarcaja Concha v. Lyons*, --- F. Supp. 3d ----, 2026 WL 215417, at *14–*18 (E.D.N.Y.
2026).[5]  The same is true in Ms. De Souza Ribeiro's case.

  **a.**  **Private Interest**

  The private interest in this case is "the most significant liberty interest there is—the
interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir.
2020).  And, at this point, "[t]he deprivation that [Ms. De Souza Ribeiro is] experienc[ing] [is]
not the result of a criminal adjudication." *Id.*  Yet, she is detained at CRCF, a prison.  Her loss of
liberty has already led to devastating consequences: her sexual assault by a fellow detainee.[6]
(Doc. 14 ¶ 39.)  In prison, she undoubtedly has limited access to counseling services for the
trauma she just endured.

  The court recognizes that, unlike other noncitizens detained under 1226(a), Ms. De Souza
Ribeiro has not developed ties to the United States.  In *Department of Homeland Security v.
Thuraissigiam*, 591 U.S. 103 (2020), cited by the Government, that distinction played a critical
role in the Supreme Court's due process analysis.  There, the Court held that,

> [w]hile [noncitizens] who have established connections in this country have due
> process rights in deportation proceedings, . . . Congress is entitled to set the
> conditions of [a noncitizen's] lawful entry into this country and that, as a result, [a
> noncitizen] at the threshold of initial entry cannot claim any greater rights under the
> Due Process Clause.

---

[5] The cases holding that it is a violation of due process to deny a bond hearing to a
noncitizen detained under § 1226(a) are too numerous to cite here.  The court has selected a
handful of cases as examples.

[6] In its briefing, the Government questions whether Ms. De Souza Ribeiro was actually
the victim of sexual assault.

591 U.S. at 107. That holding does not control here.[7] As the court in *Mata Velasquez v. Kurzdorfer*, 795 F. Supp. 3d 128 (W.D.N.Y. 2025) explained, *Thuraissigiam*'s holding is not that arriving noncitizens have no due process rights beyond what Congress provides but that they have "only those rights *regarding admission* that Congress has provided by statute.'" *Id.* at 147 (emphasis in *Mata Velasquez*; quoting *Thuraissigiam*, 591 U.S. at 140). In other words, the due process right at issue in *Thuraissigiam* was the right to be admitted to the United States, not the right to be free from arbitrary detention.

When the personal interest at issue is the right to remain in the United States, it makes perfect sense that the procedures due to someone who just arrived would be less than those afforded to someone who has lived here for years. The stakes for the individuals involved are different. Here, the personal interests involved are largely the same regardless of whether a noncitizen has developed ties to the United States. Like noncitizens who have lived here for years, Ms. De Souza Ribeiro's detention means she must live in close quarters with strangers, eat a regulated diet, follow a predetermined schedule, and live under constant scrutiny. Her detention means she cannot work, cannot speak regularly with her family, and cannot access the normal comforts and amenities of life outside of prison. Her detention also makes it more difficult for her to work with her attorneys and prepare a defense to her removal. The deprivations she faces are, therefore, very similar to those faced by noncitizens who have resided in the U.S. for years.

---

[7] To the extent that *Thuraissigiam*'s holding does apply in this case, it does not affect the court's conclusion. Although the Court held that the petitioner had few rights under the due process clause, the Court *did* hold that he has "those rights regarding admission that Congress has provided by statute." 591 U.S. at 140. Here, Ms. De Souza Ribeiro requests no more than the rights provided to her by statute and regulation—treatment under § 1226(a) and, therefore, a bond hearing.

b.    **Risk of Erroneous Deprivation**

In the civil immigration context, detention "has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (cleaned up); *see also Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (when determining whether to release a noncitizen from detention, an Immigration Judge considers whether the individual "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk"). Thus, if Ms. De Souza Ribeiro is being detained despite the fact that she is neither a flight risk nor a danger to the community, the Government is erroneously depriving her of his freedom.

Without a bond hearing, the risk of an erroneous deprivation for someone detained under § 1226(a) is high.  As other courts to consider this issue have noted, § 1226(a) "vests broad authority to arrest and detain noncitizens," *Lopez Benitez*, 795 F. Supp. 3d at 492, providing that, "pending a decision on whether [a noncitizen] is to be removed from the United States," the Attorney General "may . . . detain" the noncitizen or "may release" the noncitizen on "bond" or "conditional parole."  8 U.S.C. § 1226(a).  Thus, "due process must account for the wide discretion that [§] 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." *Lopez Benitez*, 795 F. Supp. 3d at 492 (quoting *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021)).  And § 1226(a)'s implementing regulations specifically create a procedure to protect against erroneous deprivations: individualized bond redetermination hearings before an immigration judge. *See* 8 C.F.R. § 1003.19.

Right now, the risk of erroneous deprivation for Ms. De Souza Ribeiro is high.  "Even in the context of Velasco Lopez's section 1226(a) detention, where he received two bond hearings

at which he bore the burden of proof, [the Second Circuit] concluded that 'the procedures underpinning [his] lengthy incarceration markedly increased the risk of error.'" *Black*, 103 F.4th at 152 (alteration in original) (quoting *Velasco Lopez*, 978 F.3d at 852). Here, Ms. De Souza Ribeiro has received no process whatsoever,[8] "and the risk of erroneous deprivation is correspondingly greater." *Id.*

### c.    The Government's Interest

The last *Mathews* factor considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. As already noted, the Government has a legitimate interest in ensuring that noncitizens appear at their immigration proceedings and in preventing noncitizens from perpetrating harm in their communities during the pendency of their removal proceedings.

As in *Black*, "the additional procedural safeguards [the court] would allow here under *Mathews* do nothing to undercut those interests." 103 F.4th at 153. "At a bond hearing before an immigration judge, that judge would assess [Ms. De Souza Ribeiro's] flight risk and dangerousness on an individual basis, just as immigration judges routinely do in other cases." *Rashid v. Trump*, --- F. Supp. 3d ----, 2025 WL 3210955, at *13 (D. Vt. 2025). In fact, "[t]o

---

[8] To the extent that the Government argues that Ms. De Souza Ribeiro could have sought parole, the risk of erroneous deprivation is still high. For noncitizens detained under § 1225(b)—as the Government contends Ms. De Souza Ribeiro is—parole is only available "on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizens] present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). The regulations provide a defined list of scenarios in which parole would be appropriate. Moreover, "the parole decision is not made by a neutral judicial arbiter, but rather by an executive officer of the Department of Homeland Security," and the determination is a discretionary one that is often "unreviewable by an immigration judge or federal court." *Ahmed v. Decker*, No. 17-cv-0478, 2017 WL 6049387, at *7 (S.D.N.Y. Dec. 4, 2017) (cleaned up).

require that the Government justify continued detention 'promotes the Government's interest—
one [the court] believe[s] to be paramount—in minimizing the enormous impact of incarceration
in cases where it serves no purpose." *Black*, 103 F.4th at 154 (quoting *Velasco Lopez*, 978 F.3d
at 854). In this case specifically, the Government has not argued that Ms. De Souza Ribeiro is a
danger or a flight risk.

The court also notes that, when a petitioner has an asylum application pending, "courts in
this circuit have weighed that factor in favor of the petitioner—and have done so without
inquiring into the underlying strength of the application—because of the 'possibility that the
Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the
Petitioner pending a final determination as to whether he is removable.'" *Rashid*, --- F. Supp. 3d
----, 2025 WL 3210955, at *13 (quoting *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266,
at *11 (S.D.N.Y. May 23, 2018)). Here, Ms. De Souza Ribeiro has a T visa application pending
and plans to file applications for a U visa and for asylum. These three possible avenues for relief
increase the likelihood that she will be allowed to stay in the U.S., which in turn decreases the
Government's interest in detaining her.

Finally, as the Second Circuit noted in *Black* and *Velasco Lopez*, any administrative
burden imposed by providing Ms. De Souza Ribeiro with a bond hearing would likely be
outweighed by the reduced cost of unnecessarily detaining a noncitizen who is neither a flight
risk nor a danger to the community. "[T]he Department of Justice reported an average cost of
detaining noncitizens, in 2019, of $88.19 per prisoner per day. Other estimates have placed the
cost as high as $134 per day." *Black*, 103 F.4th at 154. The administrative burden would
therefore be negligible.

Together, the *Mathews* factors demonstrate that Ms. De Souza Ribeiro's detention with no process afforded to her violates her rights under the due process clause of the Fifth Amendment.

### 3.    Remedy

It remains for the court to decide what process Ms. De Souza Ribeiro is due. Ms. De Souza Ribeiro requests that the court grant her immediate release. "H[er] interest in h[er] liberty, however, must be weighed against the government's legitimate interests in detaining noncitizens who are a flight risk or who are a danger to the community." *Rashid*, --- F. Supp. 3d ----, 2025 WL 3210955, at *14. The appropriate remedy is therefore a prompt bond hearing before an immigration judge at which the Government bears the burden of proving flight risk or dangerousness by clear and convincing evidence. *See Black*, 103 F.4th at 155 (holding that appropriate remedy for a noncitizen who had faced prolonged detention was a bond hearing before an immigration judge at which the government bore the burden of proving by clear and convincing evidence that the noncitizen was dangerous or a flight risk).

### Conclusion

For the foregoing reasons, the Amended Petition for Habeas Corpus is GRANTED IN PART and DENIED IN PART. The Petition is DENIED as to Ms. De Souza Ribeiro's claims against the Marshals Service and insofar as she requests immediate release by this court. It is otherwise GRANTED. Respondents are ordered to provide Ms. De Souza Ribeiro with a bond hearing consistent with this court's opinion within seven days.

Dated at Burlington, in the District of Vermont, this 23rd day of February, 2026.

Geoffrey W. Crawford, Judge
United States District Court